IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:19CR37 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM TAYLOR, | ) | SENTENCING MEMORANDUM BY |
| | ) | UNITED STATES |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel Justin E. Herdman, United States Attorney for the Northern District of Ohio, and Brad J. Beeson, Assistant United States Attorney, and submits this memorandum setting forth the Government's position concerning the imposition of sentence for Defendant William A. Taylor ("Taylor.")  In summary, the Government respectfully submits: (1) Defendant's final adjusted offense level is 13, after acceptance; (2) the Court should not depart or vary from that final adjusted level, and (3) that the Court should impose a sentence within the guidelines of 30-37 months of custody.

## BACKGROUND

On January 16, 2019, Taylor was charged in a one-count Indictment with assault on a federal officer in violation of 18 U.S.C. §§ 111(a)(1) and 111(b).  On May 17, 2019, Taylor pleaded guilty to Count 1 of the Indictment pursuant to a written plea notice.

**I.      Factual Background**

On October 4, 2018, Taylor, who was serving a supervised release revocation term at the Oriana Halfway House in Cleveland, Ohio, was terminated from the re-entry program due to

noncompliance. On that date, U.S. Marshal's Task Force Officers (TFO) Ortiz and Westerfield went to the Oriana Halfway House to arrest Taylor.

The facility was placed on lock down, and Taylor was escorted to the lobby area by a staff member. The TFOs gave Taylor verbal instructions to stand against the wall as they attempted to place him into custody; however, Taylor pulled away and attempted to run through TFO Westerfield in order to exit the facility. A physical altercation ensued that included the officers taking Taylor to the ground in order to have better control of him. The officers continued to advise Taylor to quit resisting; however, the altercation continued for two minutes before officers were able to arrest Taylor. During the altercation Taylor continued to try to stand and flee, which at one point caused a desk to flip over and land on the TFOs and Taylor as they tussled.

Subsequent to being arrested, Taylor spontaneously uttered that he knew he was being arrested when the facility was placed on lock down, and he was escorted to the lobby. Taylor also stated that while being escorted he made up his mind that he was not going back to prison, and he would resist and fight if needed to elude being arrested.

Pictures taken immediately after Taylor's arrest reveal that TFO Ortiz sustained a small laceration/burn on his left hand. Additionally, TFO Westerfield sustained bruising to the side of his head, the back of his head, and his neck.

UNITED STATE'S POSITION ON SENTENCING

## I.     Applicable Legal Standard

Any sentencing determination must begin with consideration of the Sentencing Guidelines. Although the Supreme Court has declared the Guidelines to be advisory, it has also stated that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines

should be the starting point and the initial benchmark." <u>See</u> <u>Gall v. United States</u>, 128 S. Ct. 586, 596 (2007).  The Sixth Circuit adheres to this view, holding that sentencing determinations should begin with a calculation of the appropriate Guidelines range.  The Guidelines then serve as an element to be considered along with the other sentencing factors set forth in 18 U.S.C. § 3553(a).  <u>See</u> <u>United States v. Collington</u>, 461 F.3d 805, 807 (6th Cir. 2006).

In addition to the Sentencing Guidelines, this Court must also consider the sentencing considerations set forth in 18 U.S.C. § 3553(a).  In a supervised release revocation proceeding, the court should consider all of the § 3553(a) factors, except § 3553(a)(2)(A).  <u>See</u> 18 US.C. § 3583(e).  Therefore the factors to be considered include:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (3) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (4) the guidelines and policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.  <u>See</u> 18 U.S.C. §§ 3553(a) and 3583(e).

## II.     The Sentencing Guidelines

Taylor had plead guilty to Count 1 of the Indictment, assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1).

The United States concurs with the Guidelines in the PSR.  The base offense level is 10, and the United States agrees with the PSR that Taylor is subject to a three-level enhancement

under § 2A2.4(b)(1)(A) for the offense involving physical contact, as well as a two-level enhancement because the victim sustained bodily injury under § 2A2.4(b)(2).

The United States submits that Taylor is eligible for the two-level reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

A.  Summary of Calculation

The following is a summary of the Sentencing Guidelines as they apply to Taylor.

| Guidelines Reference | Points | Total |
|---|---|---|
| §2A2.4 - base offense level | 10 | 10 |
| §2A2.4(b)(1)(A) – the offense involved physical contact | 3 | 13 |
| §2A2.4(b)(2) – The victims sustained bodily injury | 2 | 15 |
| §3E1.1 - acceptance of responsibility | -2 | 13 |

B.  Details of Calculation

The Sentencing Guidelines found at §2A2.4 apply to the obstructing of impeding officers.

1.  USSG §2A2.4

Under §2A2.4 the base offense level is ten points. See USSG §2A2.4.  Depending upon the specific characteristics of the offense there are increases and decreases to the adjusted offense level. See USSG §2A2.4(b).

2.  USSG §2A2.4(b)(1)(A)

The Sentencing Guidelines at §2A2.4(b)(1)(A) states that "if the offense involved physical contact" the offense level should be increased by three levels.  In this matter, that condition has been met.  Video of the incident shows there was physical contact between Taylor and Task Force Officers Ortiz and Westerfield while attempting to exit the facility and assume

4

custody and transport Taylor from Oriana Halfway House. A physical altercation began when Taylor pulled away and attempted to run through TFO Westerfield to exist the facility. This resulted in Taylor and the TSOs ending up tussling on the floor. The conduct here involved physical contact, resulting the three-level enhancement applying to Taylor's sentence.

      3.  USSG §2A2.4(b)(2)

The Sentencing Guidelines at §2A2.4(b)(2) states that "if the victim sustained bodily injury" the offense level should be increased by two levels.  According to the Commentary, Application Note 1 states the Court should use the commentary in §1B1.1 to define "bodily injury." According to that commentary, bodily injury is defined as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 application note 1(B).  In this matter, that condition has been met.

The Sixth Circuit held that striking an officer on the head, even without medical attention, has been deemed a significant injury for purposes of the sentencing enhancement. *United States v. Perkins*, 89 F.3d 303, 308 (6th Cir. 1996) (holding hitting a victim in the head with a gun was a bodily injury under Section 1B1.1, application note 1(b)); *United States v. Person*, 714 Fed.Appx. 547, 551-52 (6th Cir. 2017) (deciding a hit with the butt of a gun at the base of the head and neck area that did not require medical attention was a bodily injury) Similarly, TFO Westerfield was afflicted with a head injury during Taylor's fight to elude custody and did not seek medical attention.  TFO Westerfield's head injury may still be considered a significant injury for purposes of the sentencing enhancement even without medical attention.

Slaps in the face, hyperextension in the shoulder, knee soreness, and elbow soreness have been held to be "painful and obvious" injuries for purposes of a significant bodily injury

enhancement.  *United States v. Greene,* 964 F.2d 911, 912 (9th Cir.1992) (holding bodily injury enhancement justified for teller who had been slapped in the face during robbery); *United States v. Muhammad*, 948 F.2d 1449, (6th Cir. 1991) (holding an officer's soreness in knees and elbow for two weeks and hyperextension in shoulder as a result of being beaten and kicked was a bodily injury).  In this case, Taylor struck the TFO Officer in the head and neck after knowingly initiating a physical altercation with the TFO Officers. The three of them wrestled to the floor and had a desk flip on them. The bruises TFO Westerfield received should be determined painful and obvious injury, just as slaps and soreness have been previously.

It is not required that there be an obvious, apparent injury for there to be a "significant injury" for purposes of sentencing under Section 1B1.1 and defining "bodily injury."  *United States v. Davenport*, 30 Fed.Appx. 338, 339-40 (6th Cir. 2002) (holding that even though the bank teller was struck and only had a headache, this was still bodily injury).  The court emphasized that "oftentimes head injuries result in injuries that are not immediately apparent when the head is struck."  *Id.* at 340.  Here, Task Officer Westerfield had a head and neck injury with bruising as a result of the physical fight with Taylor during their attempt to return him to custody.  Even if he only had a headache like in *Davenport*, a bodily injury still exists.

This is a "significant injury" for purposes of a sentence enhancement for a bodily injury under Section 2.A41.  Thus, the two level enhancement for the victim sustaining bodily injury should be applied in this case.

III.    **Application of § 3553(a) Factors**

    A.    <u>Nature and Circumstances of the Offense and History and Characteristics of the Defendant</u>

On October 4, 2018, Task Force Officers Ortiz and Westerfield, while assisting the United States Department of Justice Marshals Service in the performance of its duties, went to

Oriana Halfway House located at 1829 East 55th Street, Cleveland, Ohio, in the Northern District of Ohio, to assume custody and transport Federal Inmate Taylor, who was being terminated from the program. Each officer was wearing a police badge, and Task Force Officer Ortiz was wearing a shirt that had "police" on it.

Taylor fought and resisted Ortiz and Westerfield while attempting to exit the facility.  As a result of this altercation, Ortiz and Westerfield sustained injuries to their extremities and head and neck area.  Taylor admitted that he knew that he was being arrested when he was being escorted to the front of the building, but he made up his mind that he was not going back to prison and that he was going to resist and fight if he needed to so he would not be arrested.

      B.    The Need to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant

The proposed sentence will serve as both a specific and general deterrent.  As for specific deterrence, while in custody, and later on supervised release, Taylor will have time to reflect upon the choices he has made, and will be reminded that his crimes were unacceptable.  As for general deterrence, the proposed sentence will place the public on notice that the United States takes bank robberies seriously, and offenders will be prosecuted.

      C.    Educational or Vocational Training, Medical Care, or Other Correctional Treatment

The Government is unaware of any evidence to support adjusting the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in this matter."  See 18 U.S.C. § 3553(a)(2)(D).

      D.    Guidelines and Policy Statements Issued by the Sentencing Commission

Section 7B1.3(f) of the Guidelines provides that "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served

consecutively to any sentence of imprisonment that the defendant is serving . . . ."  Although it reads as mandatory, "[t]his policy statement is not binding on the district court, and construing it to be mandatory would be reversible error."  United States v. Johnson, 640 F.3d 195, 208 (6th Cir. 2011) (citing United States v. Sparks, 19 F.3d 1099, 1101–02 (6th Cir.1994)).

     F.     Need to Avoid Unwarranted Sentence Disparities

The case at bar does not present any issue of sentencing disparity.

     G.     Need to Provide Restitution to Any Victims of the Offense

The case at bar does not present any issue of restitution.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court impose a sentence within the guidelines of 30-37 months of custody.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/ Brad J. Beeson
     AUSA Brad J. Beeson (IL: 6236690)
     Assistant U.S. Attorney
     United States Court House
     801 West Superior Avenue, Suite 400
     Cleveland, Ohio 44113-1852
     (216) 622-3850
     (216) 522-2403 (facsimile)
     brad.beeson@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of August 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Brad J. Beeson
Brad J. Beeson
Assistant U.S. Attorney